1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11

UNITED STATES OF AMERICA,

No.  1:06-cr-000342 DAD

12

Plaintiff,

13

v.

<u>AMENDED ORDER</u>

14

LUKE ANTHONY SCARMAZZO,

(Doc. Nos. 453, 454, 464, 471, 477, 479, 480, 481, 482)

15

Defendant.

16
17

**INTRODUCTION**

18

Pending before the court is defendant Luke Scarmazzo's Motion for Reduction in

19

Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Doc. No. 454.)[1]  In the pending motion,

20
21

_____

22

[1]  Petitioner first filed his *pro se* motion for a reduction of his sentence along with a motion for appointment of counsel on November 18, 2019.  (Doc. Nos. 453, 454.)  The originally assigned district judge referred the motion to the Federal Defender's Office and set a briefing schedule. (Doc. Nos. 456, 457.)  Defendant's motion for appointment of counsel (Doc. No. 453) was subsequently granted, and counsel was appointed in connection with the pending motion on December 20, 2019.  (Doc. No. 459.)  Thereafter, appointed counsel filed a supplemental motion for reduction of sentence on defendant Scarmazzo behalf as well as supporting documents.  (Doc. Nos. 464, 471.)  The government filed its opposition to the motion on May 6, 2020.  (Doc. No. 472.)  Defendant's counsel filed a reply on June 1, 2020, followed by a number of supplemental filings over the course of the next year.  (Doc. Nos. 477, 479-482.)  On February 3, 2022, a substitution and association of new counsel on behalf of petitioner was approved by the court. (Doc. No. 493.)  Another new counsel of record filed a notice of appearance on petitioner's behalf on October 18, 2022.  (Doc. No. 500.)  Finally, supplemental briefing requested by the court was filed by the parties on January 27, 2023.  (Doc. Nos. 506, 507.)

23
24
25
26
27
28

defendant Scarmazzo primarily argues that "extraordinary and compelling" reasons support his release from confinement.  After the pending motion was briefed by the parties, the court held a hearing with respect to defendant's motion on June 30, 2021 at which counsel for both defendant and the government appeared.  (Doc. No. 487.)

For the reasons explained below, defendant's motion will be granted.[2]

## BACKGROUND

On October 12, 2006, a federal grand jury in the Eastern District of California  returned an indictment in this action charging defendant Luke Scarmazzo and seven co-defendants in connection with the operation of a purported medical marijuana dispensary, California Healthcare Collective, in Stanislaus County.  (Doc. No. 3.)[3]  Defendant Scarmazzo, who with co-defendant Ricardo Montes were identified as the owners of California Healthcare Collective, was charged in

---

[2]  The undersigned apologizes for the excessive delay in the issuance of this order.  This court's overwhelming caseload has been well publicized, and the long-standing lack of judicial resources in this district long-ago reached crisis proportion.  While that situation was partially addressed by the U.S. Senate's confirmation of district judges for two of this court's vacancies on December 17, 2021 and June 21, 2022, another vacancy on this court with only six authorized district judge positions was created on April 17, 2022 and still remains unfilled.  It has now been over 37 months since this court had its full complement of authorized district judges.  For over twenty-two of those months the undersigned was left presiding over approximately 1,300 civil cases and criminal matters involving 735 defendants.  That situation resulted in the court not being able to issue orders within an acceptable period of time, a reality that continues even now as the undersigned works through the predictable backlog.  This has been frustrating to the court, which fully realizes how incredibly frustrating it is to the parties and their counsel.

[3]  At the time of the indictment in this case, California's Compassionate Use Act ("CUA") had decriminalized possession and cultivation of marijuana only for medical use, and its Medical Marijuana Program Act ("MMPA") authorized the possession, cultivation, possession for sale, and sale of marijuana to qualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with identification cards, who associate within the State of California in order collectively or cooperatively to cultivate cannabis for medicinal purposes.  *See United States v. Pisarski*, 965 F.3d 738, 740 (9th Cir. 2020).  California prohibited the sale, possession, and cultivation of marijuana, aside from the immunities provided in the CUA and MMPA.  *Id.*  Finally, the MMPA provided a defense under California law to patients who participated in collectively or cooperatively cultivating marijuana only if they could "show that members of the collective or cooperative:  *(1) are qualified patients who have been prescribed marijuana for medicinal purposes, (2) collectively associate to cultivate marijuana, and (3) are not engaged in a profit-making enterprise.*"  *Id.* at 744 (quoting *People v. Jackson*, 210 Cal. App. 4th 525, 529 (2012), and citing Cal. Health & Safety Code § 11362.775) (emphasis added).

the indictment with engaging in a continuing criminal enterprise (CCE) from 2004 through 2006 in violation of 21 U.S.C. § 848 (Count 1); conspiracy to manufacture distribute and possess with the intent to distribute 1,000 or more marijuana plants in violation of 21 U.S.C. §§ 846 and 841 (Count 2); manufacturing 1,000 or more marijuana plants in violation of 21 U.S.C. § 841 (Count 3); four counts of possession of marijuana with the intent to distribute in violation of 21 U.S.C. § 841 (Counts 4, 6, 7 and 10); possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Count 8); manufacturing of marijuana in violation of 21 U.S.C. § 841 (Count 11); and conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h) (Count 18).  (*Id.*)  There was also a criminal forfeiture allegation in the indictment brought pursuant to 21 U.S.C. § 853(p).  (*Id.*)  On May 15, 2008, on the tenth day of their trial, guilty verdicts were returned by the jury as to defendants Scarmazzo and Montes, who were then remanded into custody.  (Doc. Nos. 250, 251.)  Specifically, defendant Scarmazzo was found guilty on Counts 1 (engaging in a continuing criminal enterprise); 3 (manufacturing marijuana with a finding of 100 or more marijuana plants involved); and 7 (possession with the intent to distribute marijuana).  (*Id.*)  Defendant Scarmazzo was found not guilty by the jury as to the charge of possession of a firearm in furtherance of a drug trafficking crime alleged in Count 8.  (*Id.*)[4]

On November 21, 2008, defendant Scarmazzo was sentenced to the custody of the U.S. Bureau of Prisons for a term of 262 months on Count 1, engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848[5]; a 151-month term of imprisonment on Count 3, manufacturing 100 or more marijuana plants in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A); and a 151-month term of imprisonment on Count 7, possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841, with all terms of imprisonment to run concurrently for a

---

[4]  The jury did not reach a verdict as to Count 2 and, on June 16, 2008, the government's motion to dismiss that count as to defendants Scarmazzo and Montes was granted.  (Doc. No. 271.) Counts 4, 6, 10, 11 and 18 against defendant Scarmazzo were also dismissed.  (Doc. No. 320.)

[5]  The penalty on this count of conviction was a mandatory minimum 20-year term of imprisonment, up to life imprisonment, a fine of up to $2 million, and a five-year term of supervised release to follow with the mandatory penalty assessments.  (Doc. No. 3-2.)

1   total aggregate prison term of 262 months (or 21 years, 10 months).  (Doc. Nos. 320, 331 and

2   336.)

3          After his motion for a new trial was denied, defendant Scarmazzo appealed from his

4   judgment of conviction and sentence.  (Doc. Nos. 316, 329)  On January 4, 2011, the Ninth

5   Circuit affirmed his conviction and sentence.[6]  (Doc. Nos. 406 and 407.)  The United States

6   Supreme Court thereafter denied defendant's petition for certiorari.  On April 27, 2012, defendant

7   Scarmazzo filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255

8   and amended that motion on May 14, 2012.  (Doc. Nos. 424, 426.)  After the motion was fully

9   briefed (Doc. Nos. 432, 437, 438), it was denied by the previously assigned district judge.  (Doc.

10   No. 439.)  On September 4, 2013, the Ninth Circuit denied defendant's request for a certificate of

11   appealability with respect to that order.  (Doc. No. 448.)

12          In January 2017, President Barack Obama granted clemency and commuted the 240-

13   month sentence of the co-owner and executive director of the California Healthcare Collective

14   marijuana dispensary, co-defendant Ricardo Montes.  However, defendant Scarmazzo's request

15   for clemency was not granted.

16          Defendant Scarmazzo was 26 years old at the time of his sentencing and has now served

17   approximately 14 years and 8 and a half months of his sentence.[7]  He is currently incarcerated at

18   the U.S. Bureau of Prisons' ("BOP") FCI-Yazoo City Medium institution in Mississippi.  *Find an*

19   *inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited January 31,

20   2023).  Defendant Scarmazzo is currently scheduled to be released on March 14, 2027.  (Id.)

21          On August 13, 2019, defendant Scarmazzo filed a request for compassionate release with

22   the warden at his institution of confinement at the time.  Defendant did not receive a response to

23   this request.  On November 18, 2019, he filed the now-pending motion for reduction in sentence

24   pursuant to  18 U.S.C. § 3582(c)(1)(A)(i).  (Doc. No 454.)  Therein, defendant Scarmazzo argues

25

26   [6]  In doing so, that court referred to the "overwhelming evidence" of defendant Scarmazzo's guilt
     presented at his trial.  (Doc. Nos. 406 at 4; 407 at 3.)

27

28   [7]  With maximum good time credits this would translate into approximately 16 years, 11 months
     of time credits.

4

that his sentence should be reconsidered and reduced for the following reasons which he characterizes as "extraordinary and compelling":

1. He received an unusually long sentence for his criminal conduct;

2. His co-defendant received a sentence commutation in 2017;

3. The federal government no longer prosecutes the conduct for which he was convicted; and

4. Defendant has established a record of his own rehabilitation and poses no danger to the public if release from confinement.

(Doc. No. 454.)

On April 5, 2020, appointed counsel filed a Second Supplemental Brief on behalf of defendant in support of his Motion for Reduction in Sentence. (Doc. No. 464.) The Second Supplemental Brief raised two additional grounds for defendant's compassionate release:

5. COVID-19 had become prevalent in the facility where defendant was detained; and

6. A congressional appropriations rider ("the appropriations rider") passed in 2014 prohibits defendant's continued confinement by forbidding the federal government from using federal appropriations to incarcerate individuals who were sentenced for conduct that complied with their state's marijuana laws. *See United States v. McIntosh*, 833 F.3d 1163, 1174 (9th Cir. 2016).

Thereafter, on June 22, 2022, counsel for defendant filed another supplemental brief in which another ground for compassionate release was raised. (Doc. No. 495 at 14.) Specifically, it was asserted at that time that developing difficult family circumstances requiring defendant's presence justified the granting of relief. (*Id.*)

The government filed its opposition to defendant's motion on May 6, 2020. (Doc. No. 472.) Counsel on behalf of defendant Scarmazzo filed a reply (Doc. No. 477), as well as Third and Fourth Supplemental Briefs (Doc. Nos. 481 and 482), several post-hearing supplemental briefs (Doc. Nos. 489-90, 495, 497, 502), and letters and declarations (Doc. Nos. 471-80, 491.) ////

1   Finally, supplemental briefing by both parties has now been filed at the court's request. (Doc.

2   Nos. 506, 507.)

3                                           **LEGAL STANDARD**

4            A court generally "may not modify a term of imprisonment once it has been imposed." 18

5   U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of

6   conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not

7   be modified by a district court except in limited circumstances."). Those limited circumstances

8   include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp.

9   3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"),

10  motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A)

11  (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for

12  compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the

13  FSA specifically provides that a court may:

14              upon motion of the defendant after the defendant has fully exhausted
                all administrative rights to appeal a failure of the [BOP] to bring a
15              motion on the defendant's behalf[8] or the lapse of 30 days from the
                receipt of such a request by the warden of the defendant's facility,
16              whichever is earlier, may reduce the term of imprisonment (and may
                impose a term of probation or supervised release with or without
17              conditions that does not exceed the unserved portion of the original
                term of imprisonment), after considering the factors set forth in [18
18              U.S.C. §] 3553(a) to the extent that they are applicable, if it finds
                that –
19
20          (i)     extraordinary and compelling reasons warrant such a
                    reduction; or
21
            (ii)    the defendant is at least 70 years of age, has served at least 30
22                  years in prison, pursuant to a sentence imposed under section
                    3559(c), for the offense or offenses for which the defendant
23                  is currently imprisoned, and a determination has been made
                    by the Director of the [BOP] that the defendant is not a danger

24  ───────────────
    [8] If the BOP denies a defendant's request within 30 days of receipt of such a request, the
25  defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the
    date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a
26  defendant's administrative appeal, the defendant must appeal again to the BOP's "General
    Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the
27  General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is
    resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C.
28  § 3582(c)(1)(A).

                                                    6

to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[9]

The policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[10]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit has held "that the current version of U.S.S.G.

---

[9]  Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[10]  The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

§1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In so holding, the Ninth Circuit joined the five other circuits who have addressed this issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A) motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a defendant." *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement §1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ("In short, we agree with the Second Circuit and the emerging consensus in the district courts: There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" (citation omitted)); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test,

8

1   its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case

2   was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G.

3   § 1B1.13.").

4        It is now settled that "[i]n the absence of an applicable policy statement from the

5   Sentencing Commission, the determination of what constitutes extraordinary and compelling

6   reasons for sentence reduction lies squarely within the district court's discretion." *United States*

7   *v. Chen*, 48 F.4th 1092, 1095 (9th Cir. 2022).  As the Supreme Court has held, "[i]t is only when

8   Congress or the Constitution limits the scope of information that a district court may consider in

9   deciding whether, and to what extent, to modify a sentence, that a district court's discretion to

10   consider information is restrained." *Concepcion v. United States*, __U.S.__, 142 S. Ct. 2389,

11   2396 (2022).

12        In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the

13   defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See*

14   *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Likewise, the defendant bears

15   the burden of "establish[ing] his eligibility for compassionate release." *United States v. Wright*,

16   46 F.4th 938, 951 (9th Cir. 2022); see also *United States v. Greenhut*, No. 2:18-cr-00048-CAS,

17   2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-

18   JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

19   **ANALYSIS**

20        As district courts have summarized, in analyzing whether a defendant is entitled to

21   compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a

22   defendant has satisfied three requirements:

23           First, as a threshold matter, the statute requires defendants to exhaust
             administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Second, a
24           district court may grant compassionate release only if "extraordinary
             and compelling reasons warrant such a reduction" and "that such
25           reduction is consistent with applicable policy statements issued by
             the Sentencing Commission.  *Id.*  Third, the district court must also

26
27            consider "the factors set forth in Section 3553(a) to the extent that
             they are applicable." *Id.*

28

9

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 973–74; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in § 3553(a)).

**A.     Administrative Exhaustion**

On August 13, 2019, defendant submitted a request for reduction of sentence with the warden at the Pollack, Louisiana Federal Correction Institute where he was then confined.  (Doc. No. 454 at 23.)  Petitioner filed his *pro se* motion for a reduction of his sentence along with a motion for appointment of counsel on November 18, 2019.  (Doc. Nos. 453, 454.)  Although the government contests administrative exhaustion, the basis for its objection in this regard is not entirely clear.  Indeed, the government concedes that defendant Scarmazzo submitted a request for compassionate release to the warden at his institution of confinement in August of 2019 and that "BOP records do not show any response."  (Doc. No. 472 at 14.)  Because defendant did not file the pending motion for compassionate release until after 30 days had passed without a response from the warden, the court concludes that he properly exhausted his administrative remedies.  Therefore, the court will turn to address the merits of defendant's motion.

**B.     Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons."  U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, and that policy statement "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant," courts have agreed that defendants may support their own motions for reduction of their sentence under the FSA by asserting extraordinary and compelling reasons exist based on "other reasons."  *Aruda*, 993 F.3d at 802 ("The Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding."); *see also*

1  *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr.

2  28, 2020) (collecting cases).

3          Defendant Scarmazzo argues in the pending motion that his compassionate release is

4  warranted based upon extraordinary and compelling reasons such as the COVID-19 pandemic, as

5  well as "other reasons" as proscribed by the statute.  Among these "other reasons," defendant

6  Scarmazzo argues that purported changes in federal marijuana law (or at least in prosecutorial

7  practices) since the time of his conviction render his continued incarceration manifestly unjust.

8          1.    Medical Conditions Warranting Compassionate Release

9          The medical condition of a defendant may warrant the granting of compassionate release

10  by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced

11  illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a

12  probability of death within a specific time period) is not required."  U.S.S.G. § 1B1.13, cmt.

13  n.1(A)(i).  Non-exhaustive examples of terminal illnesses that may warrant compassionate release

14  "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ

15  disease, and advanced dementia."  *Id.*  In addition to terminal illnesses, a defendant's debilitating

16  physical or mental condition may warrant compassionate release, including when:

17          The defendant is

18          (I)   suffering from a serious physical or medical condition,

19          (II)  suffering from a serious functional or cognitive impairment, or

20          (III) experiencing deteriorating physical or mental health because of
21          the aging process,

22          that substantially diminishes the ability of the defendant to provide
          self-care within the environment of a correctional facility and from
23          which he or she is not expected to recover.

24  *Id.* at cmt. n.1(A)(ii).  Where a defendant has moderate medical issues that otherwise might not be

25  sufficient to warrant compassionate release under ordinary circumstances, many courts have

26  concluded that the risks posed by COVID-19 may tip the scale in favor of release when the

27  particular circumstances of a case are considered in their totality.  *See, e.g.*, *Parker*, 461 F. Supp.

28  3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates

suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence.  But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors.  Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).  This provision does not apply here because, although defendant Scarmazzo has effectively served a term of nearly 17 years in prison, he is still in his forties.

Here, defendant Scarmazzo has not demonstrated that he suffers from <u>any</u> particular health condition or risk that might justify his release due to the ongoing COVID-19 pandemic.[11] Moreover, defendant represents that he contracted COVID-19 in September 2020 and fully recovered.  (Doc. No. 480.)

Although neither party has addressed defendant Scarmazzo's vaccination status, the court is aware that COVID-19 vaccines have been made available to inmates throughout the BOP's institutions.  According to the CDC, authorized vaccines "are highly effective at protecting vaccinated people against symptomatic and severe COVID-19." *COVID-19: Interim Public Health Recommendations for Fully Vaccinated People*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fullyvaccinated-guidance.html

---

[11]  Defendant's reply brief contains one sentence alluding to his suffering from high blood pressure, but he has not provided the court any evidence of hypertension whatsoever and fails to even attempt an argument relating his alleged hypertension to an increased risk posed to him by COVID-19.  (*See* Doc. No. 477 at 16) (stating only that "Mr. Scarmazzo's high blood pressure . . . <u>may or may not</u> make him vulnerable [to COVID-19]") (emphasis added.)

(last updated May 28, 2021) (emphasis added).  Medical evidence strongly suggests that fully vaccinated individuals are very well protected against becoming severely ill from COVID-19. *See United States v. Ochoa-Alapisco*, No. 14-cr-378-ADM-LIB-2, 2021 WL 2322680, at *3 (D. Minn. June 7, 2021) (denying compassionate release because "any risk . . . has been substantially reduced because [defendant] is likely now fully vaccinated" which "provides him with significant protection against severe illness or death from COVID-19 should he become reinfected"); *United States v. Willis*, No. 3:15-cr-00465-BR, 2021 WL 2179256, *3–4 (D. Or. May 27, 2021) (concluding that federal prisoners who have been fully vaccinated but suffer from chronic medical conditions that would put them at serious risk of severe illness from COVID-19 do not satisfy the extraordinary and compelling standard for compassionate release) (citing cases); *United States v. Smith*, No. 2:98-cr-00009-KJM-CKD, 2021 WL 1890770, at *3 (E.D. Cal. May 11, 2021) ("Although no federal court of appeal appears to have considered the question, district courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection."); *United States v. Kariblghossian*, No. 2:13-cr-00318-CAS-1, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021) (finding no extraordinary and compelling reasons for compassionate release where defendant has been fully vaccinated); *United States v. Grummer*, 519 F. Supp. 3d 760, 763 (S.D. Cal. 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19.  Other courts to address the issue have reached similar conclusions."); *United States v. Ballenger*, No. 3:16-cr-5535-BHS, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) ("[B]ecause [defendant] has already been infected and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and compelling reason to warrant compassionate release.").  Finally, as one judge of this court has observed, "[i]f defendants could buttress their motion for compassionate release by refusing a safe and effective vaccine, they would be operating on an unfairly perverse incentive."  *United States v. Figueroa*, No. 2:09-cr-00194-KJM, 2021 WL 1122590, at *4 (E.D. Cal. Mar 24, 2021).  Thus, whether defendant Scarmazzo is vaccinated or not, the availability of the vaccine to him in prison weighs against a finding of

1  extraordinary and compelling reasons supporting his compassionate release due to the COVID-19

2  pandemic.  Certainly the mere existence of COVID-19, without more, does not satisfy

3  defendant's burden of demonstrating extraordinary and compelling reasons for his compassionate

4  release under § 3582(c)(1)(A).  *United States. v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020); *see also*

5  *U.S, v. Eberhart*, 488 F.Supp.3d 1086, 1090 (N.D. Cal. 2020) ("a reduction of sentence due solely to

6  concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the

7  Sentencing Commission as required by § 3582(c)(1)(A).").[12]

8       Defendant Scarmazzo has made no showing that he suffers from any serious medical

9  condition or faces a serious risk of severe illness from COVID-19.  Accordingly, the pending

10  motion for compassionate release will be denied to the extent that it is based upon defendant's

11  medical condition or the risks posed to him by COVID-19.

12       2.    "Other Reasons" Supporting Compassionate Release

13       As noted above, it is now established that "the determination of what constitutes

14  extraordinary and compelling reasons for sentence reduction lies squarely within the district

15  court's discretion."  *Chen*, 48 F.4th at 1095; *see also Concepcion*, 142 S. Ct. at 2396 ("The

16  question in this case is whether a district court adjudicating a motion under the First Step Act may

17  consider other intervening changes of law (such as changes to the Sentencing Guidelines) or

18  changes of fact (such as behavior in prison) in adjudicating a First Step Act motion.  The Court

19  holds that they may.").  Thus, while "[t]he Sentencing Commission's statements in U.S.S.G.

20  § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a

21  defendant, [] they are not binding" and motions for reduction of a sentence under the FSA may be

22  granted where extraordinary and compelling reasons exist based on "other reasons."  *Aruda*, 993

23  F.3d at 802; see also *Jones*, 980 F.3d at 1111 (the district courts now have "full discretion to

24  define 'extraordinary and compelling' without consulting the policy statement § 1B1.13.");

25  *United States v. Parker*, No. 2:97-cr-00202-TLN-EFB, 2021 WL 1966409, at *2 (E.D. Cal. May

26

27  ───────────────
    [12]  The court notes that at defendant's current institution of incarceration, Yazoo City Medium
28  FCI, only 2 prisoners and 0 staff members are currently being reported as suffering from COVID-
    19.  *See* https://www.bop.gov/coronavirus/ (last checked January 31, 2023).

17, 2021) ("[T]he list of examples of extraordinary and compelling reasons in [U.S.S.G.] § 1B1.13 (i.e., medical condition of the defendant, age of the defendant, family circumstances, and other reasons) is not exclusive.").

Here, defendant Scarmazzo argues that the evolution of marijuana related policy in the United States between the time of his 2008 conviction and today is an extraordinary and compelling circumstance supporting his compassionate release. In various submissions by defendant and lawyers on his behalf, it has been stated that if defendant were operating his medical marijuana dispensary today, he either could not, would not, or likely would not be prosecuted. (*See* Doc. Nos. 454 at 3-4; 464 at 13; 477 at 9-10; 479 at 4-5; 495 at 11.) Often in making these contentions defendant Scarmazzo and his lawyers point to a 2014 appropriations rider that they suggest may prohibit defendant's continued federal incarceration. Defendant also argues that this appropriations rider, along with other legal developments over the past decade, constitute an "extraordinary and compelling" change in the law that justifies his compassionate release.

a.     *The Appropriations Rider and Defendant's Pending Habeas Petition*

Since December 2014, various congressional appropriations riders have prohibited the use of Department of Justice ("DOJ") funds to prevent states with medical marijuana programs from implementing their state medical marijuana laws.[13] In 2016, the Ninth Circuit confirmed that the appropriations riders "prohibits DOJ from spending funds from relevant appropriations acts for the prosecution of individuals who engaged in conduct permitted by the State Medical Marijuana Laws and who **fully complied** with such laws." *United States v. McIntosh*, 833 F.3d 1163, 1177 (9th Cir. 2016) (emphasis added). The Ninth Circuit made clear, however, that those appropriations riders did not prohibit the funding of prosecution of individuals for engaging in conduct that is not "strictly" in compliance with state marijuana laws. *Id*. at 1178–79; *see also United States v. Pisarski*, 965 F.3d

---

[13]  Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235, § 538, 128 Stat. 2130, 2217 (2014); Consolidated Appropriations Act, 2016, Pub. L. No. 114– 51113, § 542, 129 Stat. 2242, 2332-33 (2015); Consolidated Appropriations Act, 2017, Pub. L. No. 115-31, § 537, 131 Stat. 135, 228 (2017); Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, § 538, 132 Stat. 348 (2018). "All of these riders are 'essentially the same.'" *Kleinman*, 880 F.3d at 1027 (quoting *United States v. Nixon*, 839 F.3d 885, 887 (9th Cir. 2016)).

1   738, 741-42 (9th Cir. 2020); *United States v. Evans*, 929 F.3d 1073, 1076 (9th Cir. 2019) (Because

2   prosecution of defendants who are non-compliant with state laws "does not prevent the

3   implementation" of state marijuana laws, defendants cannot enjoin their prosecutions unless they

4   "strictly complied with all relevant conditions.").

5          In *McIntosh* the court also concluded that, because of the appropriations rider, the criminal

6   defendants in that case were "entitled to evidentiary hearings to determine whether their conduct was

7   completely authorized by state law, by which we mean that they strictly complied with all relevant

8   conditions imposed by state law on the use, distribution, possession, and cultivation of medical

9   marijuana." *McIntosh*, 833 F.3d at 1179.  Binding precedent also establishes that those seeking

10  protection or relief as a result of the appropriations rider bear the burden of proof of showing, by a

11  preponderance of the evidence, that they "strictly complied with state medical marijuana laws."

12  *Pisarski*, 965 F.3d at 742; *see also Evans*, 929 F.3d at 1076-77; *see also United States v. Daleman*,

13  1:11-CR-00385-DAD-BAM, 2017 WL 1256743, at *3 (E.D. Cal. Feb. 17, 2017).  Here, the

14  government contends that defendant Scarmazzo cannot meet this burden because the California

15  Healthcare Collective marijuana dispensary that he owned and operated was clearly not run in

16  strict accordance with California law at the time of his arrest.  (Doc. No. 472 at 12-13, 37-39.)

17         However, whether defendant Scarmazzo operated the California Healthcare Collective

18  from 2004 through 2006 in strict compliance with the requirements of California law at that time

19  is not a question properly resolved by this court in ruling upon defendant's compassionate release

20  motion.  That is because defendant Scarmazzo's request for relief under the Ninth Circuit's

21  decision in *McIntosh* is already properly pending before the U.S. District Court for the Central

22  District of California.  In this regard, defendant filed a habeas petition pursuant to 28 U.S.C.

23  § 2241 in that court in 2017, and the petition remains pending.  *See Scarmazzo v. Langford*, 17-

24  cv-02354-CJC-SK (C.D. Cal.) ("§ 2241 Petition").  In that petition, defendant seeks the same

25  finding that he presumably seeks from this court by way of his pending compassionate release

26  request based on the decision in *McIntosh*—that the congressional rider prohibits the BOP from

27  expending funds to incarcerate him such that this court should therefore order his release.

28  /////

In December 2018, the district court in the § 2241 Petition case ordered the parties to brief the effect of the decision in *Sandusky v. Goetz,* 944 F.3d 1240 (10th Cir. 2019) on defendant's petition for habeas relief.  In *Sandusky*, the Tenth Circuit confirmed that 28 U.S.C. § 2241 was "the proper vehicle for [seeking] relief" based upon a claim that the "appropriations rider prevent[s] the Bureau of Prisons [] from expending funds to incarcerate [a petitioner] during the applicable time period of the appropriations rider."  *Id.* at 1241.  In a supplemental brief submitted in the Central District habeas proceeding, defendant agreed that "a motion filed pursuant to § 2241 is the proper vehicle for [the] relief that Mr. Scarmazzo seeks, and the Court should address the merits of Mr. Scarmazzo's § 2241 petition and hold an evidentiary hearing to determine Mr. Scarmazzo's strict compliance with California's medical marijuana law in effect at the time of the offense."  (*Scarmazzo v. Langford*, 5:17-cv-02354-CJC-SK (C.D. Cal.), Doc. No. 62 at 2.)  As noted above, defendant Scarmazzo's habeas petition remains pending before the U.S. District Court for the Central District of California.  A briefing schedule has been set by that court calling for a supplemental brief to be filed by petitioner-defendant on or before January 30, 2023 and a response thereto by respondent to be filed on or before March 6, 2023.  (*Id.*, Doc. No. 86.)

Defendant Scarmazzo has not provided any authority in support of his implicit suggestion that the applicability of the federal appropriations rider to his case should be decided in the context of this motion for compassionate release rather than in his pending habeas action in which that issue has been clearly presented.  Therefore, this court declines to address defendant's arguments that the decision in *McIntosh* compel his release in resolving the pending motion for compassionate release.[14]

---

[14]  While declining to resolve this issue and deferring to the district court before which it has properly been presented, the undersigned notes that it would appear defendant Scarmazzo will face several high hurdles in order to meet his burden of establishing that in 2004-2006 he "strictly complied with state medical marijuana laws" in connection with his operation of the California Healthcare Collective as is required.  *Pisarski*, 965 F.3d at 742; *Evans*, 929 F.3d at 1076-77.  First, in order to even arguably comply with California Law at the time, defendant's marijuana dispensary had to be a non-profit enterprise.  Yet the trial judge in this case specifically found that it did not operate in compliance with that requirement.  (Doc. No. 372 at 89-91.)  According to the government, defendant Scarmazzo's enterprise grossed $9.2 million in just two years, generated at least $4.5 million in profits, and paid him a $20,000 a month salary.  (Doc. No. 472 at 11-13, 37.)  Defendant does not seriously contest these assertions, but rather suggests only that his salary was "in an amount

1           b.      *Purported Changes in Marijuana Law and Policies*

2           Defendant also suggests that, along with the appropriations riders addressed by the Ninth

3   Circuit in *McIntosh*, other changes in marijuana related laws and policy since 2006 have resulted

4   in an "extraordinary and compelling" disparity between the sentence he received and sentences

5   imposed upon those similarly situated to him who more recently engaged in the same or similar

6   criminal conduct. (Doc. Nos. 464 at 13; 477 at 14–16.) In this regard, defendant Scarmazzo

7   contends that had he operated his marijuana dispensary today, he would not even be subject to

8   federal prosecution. (Doc. No. 454 at 15, citing the Consolidation Appropriation Act of 2019,

9   Pub. L. No. 116-6, 133 stat. 3; 481 at 4-5.) Likewise, defendant asserts in conclusory fashion that

10  today he certainly would neither be subject to the twenty-year mandatory minimum sentence he

11  received for his conviction on Count 1 (CCE) nor the aggregate sentence of 262-month term of

12  imprisonment that was imposed on his three counts of conviction, all related to marijuana

13  distribution.

14          In support of this argument, defendant compares the changes in marijuana laws and policy

15  since his conviction to those cases in which defendants have been granted compassionate release

16  due to drastic changes in sentencing law brought about by the First Step Act of 2018. One such

17  change affected 18 U.S.C. § 924(c), which prohibits the use of firearms in "crimes of violence."

18  One district court has described that change as follows:

19          When Sessoms was sentenced, § 924(c) mandated a consecutive
            sentence of 25 years "[i]n the case of a second or subsequent
20          conviction under this subsection." 18 U.S.C. § 924(c)(1)(C)(i)
            (2011). In *Deal v. United States*, 508 U.S. 129 (1993), the Supreme
21          Court held that the mandate applied to multiple convictions in a
            single proceeding. *See id.* at 131. As Justice Stevens presciently
22          observed in dissent, the ruling would give prosecutors "considerable

---

23  that is reasonable and common for CEO's of non-profit corporations." (Doc. No. 490 at 11.) No
24  support is offered for this conclusory assertion. The court has some doubt that persuasive support for
    it could be offered with respect to the relevant 2004-06 time frame. But even if such support was
25  forthcoming, defendant will then need to explain away the evidence that in addition to his hefty
    salary, the "non-profit" provided him with a $50,000 Mercedes Benz, a van, money for his music
26  company and luxury purchases from numerous shops at Caesar's Palace in Las Vegas among other
    expenses. (Doc. No. 472 at 12.) These questions regarding the non-profit nature of the dispensary
27  operated by defendant are with respect to just one of the requirements for strict compliance with then
    applicable state law; there are many others which defendant would have to demonstrate were
28  satisfied.

18

1

2

3

> discretion in deciding how many § 924(c) offenses to charge in relation to a criminal transaction or series of transactions." *Id.* at 145. Hence the aforementioned practice of "stacking" that led to such Draconian sentences for Sessoms and countless others.

4

5

6

7

> Congress finally recognized the manifest unfairness of the situation in 2018. The First Step Act ("FSA") of that year amended § 924(c)(1)(C)(i) to "clarif[y]" that the 25-year penalty applies only to violations "that occur[ ] after a prior conviction of this subsection has become final." Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5222. It did not make the change retroactive. *See id.* § 403(b), 132 Stat. at 5222.

8

9

10

> At the same time, however, Congress amended the compassionate release statute, which allows the sentencing court to reduce a term of imprisonment if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that "extraordinary and compelling circumstances warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

11 *United States v. Sessoms*, 565 F. Supp. 3d 325, 327 (E.D.N.Y. 2021).[15]  Indeed, many courts have

12 concluded that  defendant's whose sentences were imposed when such "stacking" of § 924(c)

13 counts was authorized may demonstrate extraordinary and compelling circumstances justifying

14 their compassionate release based on the disparity in sentencing between the past and the present.

15 *See United States v. McCoy*, 981 F.3d 271, 285-88 (4th Cir. 2020); *see also United States v.*

16 *Sanchez*, No. 1:95-cr-05038-DAD, 2021 WL 2808702, at * 11 (E.D. Cal. July 6, 2021) (citing

17 cases).

18        Other non-retroactive changes in sentencing laws under the First Step Act impacting the

19 application of certain minimum mandatory sentences have also been found to support a finding of

20 extraordinary and compelling circumstances and the granting of compassionate release in cases

21

---

22

23

24

25

26

27

28

[15]  The practice of "stacking" § 924(c) charges was the subject of much criticism.  At a hearing before the Sentencing Commission in May 2010, Sally Quillian Yates, then U.S. Attorney for the Northern District of Georgia, testified that the "criticisms and concerns about the stacking of 924(c)s" were "well known," "particularly in a scenario where you have an individual who is charged with multiple 924(c) counts in the same indictment."  U.S. Sentencing Comm'n, Public Hearing, May 27, 2010, at 59–60 (testimony of Sally Quillian Yates), *available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20100527/Hearing_Transcript.pdf.  Later, as Deputy Attorney General, Yates provided written testimony in favor of a bi-partisan bill that would have made § 924(c) a true recidivist statute by requiring an intervening conviction to trigger the harsh second-conviction penalty. Statement of Sally Quillian Yates, Deputy Attorney General, Before the S. Jud. Comm. Hearing on S. 2123, at 2 (Oct. 19, 2015), *available at* https://www.judiciary.senate.gov/imo/media/doc/10-19-15%20Yates%20Testimony.pdf.

where the then-applicable mandatory minimum sentence was originally imposed. *See United States v. Lii*, No. CR 06-00143, 2021 WL 1113663 at *6-9 (D. Haw. Mar. 23, 2021) (where the First Step Act had redefined the types of "previous convictions" that would lead to a third-strike mandatory minimum life sentence and, had the defendant been sentenced *after* the FSA passed in 2015, he likely would have been sentenced to between 5 and 15 years in prison, "extraordinary and compelling" circumstances existed compelling the defendant's compassionate release due to sentencing disparity, his young age at the time of his conviction, and the defendant's lack of violent history.)

But it appears to the undersigned that, while perhaps somewhat instructive, the types of cases noted immediately above are distinguishable from defendant Scarmazzo's. In cases in which courts have granted compassionate release due to non-retroactive changes in sentencing law, it was clear that the change in federal law, if applied to the case today, would have resulted in the imposition of a lesser sentence. Here, that cannot be said. Title 21 U.S.C. § 848 has not been amended since defendant Scarmazzo's sentence was imposed. Under federal law, he could still be prosecuted under § 848 today for the same criminal conduct and, if convicted, would still face a mandatory minimum twenty year term of imprisonment. *See* 21 U.S.C. § 848(a). This distinguishing circumstance lead the court on January 23, 2023, to issue the following minute order requesting that the parties address in letter briefs the following questions:

> The court observes that in its view defendant's pending motion is distinguishable from those, in the 18 U.S.C. § 924(c) "stacking" context for instances, in which applicable sentencing law has changed since a sentence was imposed but the change was not made retroactive. In such contexts, the court may consider the change in sentencing law in its consideration of "other reasons" supporting the granting of compassionate release. But here, 21 U.S.C. § 848 and its penalties have not been amended, and it is the court's understanding that if convicted today of that same charge, defendant Scarmazzo would still be subject to a minimum mandatory twenty-year prison sentence. Likewise, cases such as *United States v. Vigneau*, 473 F. Supp. 3d 31, 33-36 (D. R.I. 2020), upon which defendant heavily relies here, does not address the issue because the defendant there had already served the minimum mandatory sentence of 20 years at the time his compassionate release was granted. Here, when defendant suggests he would not be subject to the 262-month sentence he received if he engaged in the same underlying conduct today, it appears that what he is actually arguing is that as a matter of prosecutorial discretion he would likely not be prosecuted under

21 U.S.C. § 848 today. That, it seems, is a very different matter over which the court has no control. Indeed, defendant's counsel in their latest filing takes the position that defendant's prosecution under that statute was very rare even at the time of defendant's conviction (see Doc. No. 502 at 7), yet defendant's conviction and sentence were affirmed on appeal. In any event, the court requests that counsel for the parties address the following. Does the court have the authority to reduce a sentence below a still valid and imposed minimum mandatory term in granting a motion for compassionate release where the only supported basis for the motion is not the defendant's own health or medical condition? If so, under what circumstances does the court have that authority? What is the specific legal authority for the position each party takes in answering this question? Finally, the court notes that it is aware of decisions in which district courts have raised this question without answering it. *See United States v. Lavatai*, CR No. 13-00021-SOM-2, 2022 WL 1136800, at *3 (D. Hawaii Apr. 18, 2022) ("Absent extraordinary circumstances that he has not shown are not present at this time, a change in the law cannot justify a sentence that is shorter than the minimum sentence that Lavatai could have received...."); *United States v. Dobbertin*, 475 F. Supp. 3d 1263, 1270 (D. Kan. 2020) ("The court need not decide whether the compassionate release statute authorizes a sentence below the mandatory minimum sentence to resolve the current motion.")

(Doc. No. 503.)

The parties timely submitted their letter briefs and the court has considered them. As to the court's first question, neither party disputes that "a mandatory minimum sentence does not preclude a district court from reducing a term of imprisonment on a motion for compassionate release." *United States v. Halvon* 26 F.4th 566, 570 (2d Cir. 2022) (citing *United States v. Owens*, 996 F.3d 755 (6th Cir. 2021) (reversing the district court's order denying compassionate release and remanding to the district court in a case where the defendant was originally sentenced to the mandatory minimum), and *United States v. Black*, 999 F.3d 1071 (7th Cir. 2021) (vacating and remanding in the same situation)); *see also United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021) (expressing "broader concerns" that judges could use compassionate release to effectively countermand Congress's mandatory minimum sentences on the basis of policy disagreements but also clarifying that those serving mandatory minimum sentences are nonetheless eligible for release, so long as it is granted on other grounds, stating "we are not saying that extraordinary and compelling individual circumstances . . . cannot in particular cases supply the basis for a discretionary sentencing reduction of a mandatory minimum sentence.").

1   The answer to the court's second question—under what circumstances does the court have

2   that authority to reduce a minimum mandatory imposed prison term in granting a motion for

3   compassionate release—is not as clear.  Defendant Scarmazzo is certainly correct when he argues

4   that there have been "dramatic changes in the legal landscape concerning the sale and use of

5   marijuana" over the fifteen years since he was sentenced, including "changes in [state] marijuana

6   laws, Congress's perspective, public sentiment, the Justice Department's enforcement policies,

7   and . . . case law."  (Doc. No. 506 at 3.)  This is particularly true in California where defendant

8   was operating his marijuana dispensary.

9   In 2006, the state of California allowed storefront medical cannabis dispensaries to sell

10   marijuana.  *See People v. Urziceanu* 132 Cal. App. 4th 7467 (2005); *People v. Hochanadel*, 176

11   Cal. App. 4th 997, 1009 (2009).  In 2008, California's then-attorney general issued guidelines

12   clarifying that legal dispensaries must be "non-profit" enterprises, which could legally reimburse

13   officers and directors for their time.  Several years later, in 2016, however, California voters

14   approved a proposition that more broadly legalized marijuana manufacture and sale within the

15   state.  Cal. Business and Professions Code § 26037.  That proposition also reduced all first-time

16   unlicensed marijuana sale and distribution offenses to misdemeanors, so long as the offense did

17   not involve a minor.  *See* Cal. Health & Safety Code §§ 11359 and 11360.  California Health &

18   Safety Code § 11359 now imposes a maximum sentence for possession of cannabis for sale

19   without a license that does not exceed 6 months in a county jail and/or a fine of not more than

20   $500.  Cal. Health & Safety Code § 11359(b).[16]

21   While federal law remains unchanged—still making the possession, cultivation and

22   distribution of marijuana unlawful and subject to criminal penalties—federal prosecutions for

23   marijuana-related offenses have been curbed significantly, particularly in states like California

24   that have legalized those activities with some restrictions.  In the undersigned's experience, for

25   the most part federal prosecution of marijuana offenses in California is now limited to those

26

27   [16]  In 2020, California categorized cannabis businesses as "essential critical infrastructure"
necessary for the "continuity of functions critical to public health and safety, as well as economic

28   and national security" during the COVID-19 emergency.  Essential Workforce (Apr. 28, 2020),
https://covid19.ca.gov/img/EssentialCriticalInfrastructureWorkers.pdf.

1  offenders engaged in large, unauthorized cultivation sites located on federal lands.  Indeed, in a

2  trial before this court last month, a very experienced DEA agent explained DOJ's policy in some

3  practical detail to the jury in a criminal prosecution involving the alleged distribution of

4  methamphetamine in which there was some evidence of marijuana distribution as well.  *See*

5  *United States v. Rivera*, 2:22cr129-DAD (E.D. Cal.).

6        Moreover, as discussed above in addressing the *McIntosh* decision, Congress has limited

7  federal oversight of marijuana-related conduct by enacting spending limitations such as the

8  appropriations rider, and the Department of Justice has refrained from pursuing federal charges

9  against licensed marijuana distributors who are operating in compliance with state laws and

10  regulations.  In 2013, for example, the DOJ advised federal law enforcement that marijuana

11  dispensaries—both medical and recreational—should only be subject to state and local law

12  enforcement action.  *See* U.S. Dep't of Justice, Office of the Deputy Attorney General,

13  *Memorandum for All United States Attorneys on Guidance Regarding Marijuana Enforcement*

14  (Aug. 29, 2013), *available at* https://www.justice.gov/iso/opa/resources/

15  3052013829132756857467.pdf (*last visited* Sept. 20, 2021).[17]

16        Those marijuana offenders who are convicted of federal criminal offenses now appear to

17  be receiving significantly shorter sentences than in the past.  *See generally* U.S. Sentencing

18  Commission, Quick Facts: Marijuana Trafficking Offenses (July 2019) (detailing the decline in

19  the number and length of sentences imposed for federal marijuana trafficking and noting that in

---

20  [17]  These changes to the legal landscape with respect to marijuana drew comment in a statement

21  respecting the denial of *certiorari* in one case with Justice Clarence Thomas observing:

22          Suffice it to say, the Federal Government's current approach to
        marijuana bears little resemblance to the watertight nationwide

23          prohibition that a closely divided Court found necessary to justify the
        Government's blanket prohibition in *Raich*.  If the Government is

24          now content to allow States to act "as laboratories" "'and try novel
        social and economic experiments,'" *Raich*, 545 U.S. at 42, 125 S. Ct.

25          2195 (O'Connor, J., dissenting), then it might no longer have
        authority to intrude on "[t]he States' core police powers ... to define

26          criminal law and to protect the health, safety, and welfare of their
        citizens."  *Ibid*.  A prohibition on intrastate use or cultivation of

27          marijuana may no longer be necessary or proper to support the
        Federal Government's piecemeal approach.

28  *Standing Akimbo, LLC v. United States*, 141 S. Ct. 2236, 2238 (2021).

23

1   Fiscal Year 2018, the "average sentence for marijuana trafficking offenders was 29 months").  In

2   short, there is no doubt in the undersigned's mind that those who violate still existing federal

3   marijuana laws today are being treated much differently by the federal criminal justice system

4   than those engaging in similar conduct were at the time of defendant Scarmazzo's criminal

5   conduct (2004–06) and his prosecution, conviction and sentencing in this federal court (2006–08).

6       That said, where does that leave the court in considering the pending motion for

7   compassionate release?  Having considered the parties' briefing and reviewed the relevant case

8   law, the undersigned's current view is as follows.  This court clearly has the authority to reduce a

9   mandatory minimum sentence in granting compassionate release.  *Halvon* 26 F.4th at 570.

10  However, where, as here, the minimum mandatory sentence is still authorized by Congressionally

11  enacted federal law that has not been subsequently subject to even non-retroactive amendment,

12  the district court should not grant compassionate release based *solely* upon its conclusion that the

13  originally imposed mandatory minimum sentence was unduly harsh.  *See Thacker*, 4 F.4th 569,

14  574.  Nonetheless, this court has broad discretion to consider the harshness of the sentence in

15  light of the current landscape in combination with other factors in determining whether

16  extraordinary and compelling circumstances warrant the granting of compassionate release in a

17  given case.  *Concepcion*, 142 S. Ct. at 2396; *Chen*, 48 F.4th at 1095; *Aruda*, 993 F.3d at 802;

18  *Jones*, 980 F.3d at 1111.

19      Accordingly, the court turns to other factors present in defendant Scarmazzo's case which

20  the court concludes do support such a finding of extraordinary and compelling circumstances.

21  C.   **§ 3553 and Other Relevant Factors**

22      Any relief to be granted pursuant to 18 U.S.C. § 3582(c)(1)(A) must be consistent with

23  consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).[18]  *See United States v.*

24  ──────────

[18]  Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court
25  shall consider: the nature and circumstances of the offense and the history and characteristics of
the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote
26  respect for the law, provide just punishment for the offense, afford adequate deterrence, protect
the public from further crimes of the defendant and provide the defendant with needed
27  educational or vocational training, medical care, or other correctional treatment in the most
effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range
28  established for the applicable category of offense committed by the applicable category of

1   *Parker*, 461 F. Supp. 3d 966, 979 (C.D. Cal. 2020).  Here, the court finds that consideration of the

2   § 3553(a) sentencing factors support defendant's release.

3          As noted above, defendant Scarmazzo is currently serving a 262-month sentence for

4   unlawfully operating a purported medical marijuana dispensary in California between 2004 and

5   2006.  At the time of sentencing his offense level was found to be 38, his criminal history

6   category to be III, resulting in an advisory sentencing guideline range calling for a term of

7   imprisonment of between 292 and 365 months.  (Doc. No. 372 at 92-93.)  Thus, the 262-month

8   sentence he received was a below sentencing guideline sentence imposed after consideration of

9   the § 3553(a) factors by the sentencing judge.  (*Id.* at 93-96.)

10         In defendant's pending motion, he notes that his co-defendant, Richard Montes, engaged

11   in the same criminal conduct as he did.  Co-defendant Montes was the CEO of the dispensary,

12   while defendant Scarmazzo served as its Chief Financial Officer.  (*See* Presentence Report "PSR"

13   at ¶ 4.)  Both Montes and Scarmazzo were convicted of possession with intent to distribute

14   marijuana,[19] and both were convicted of conducting the same continuing criminal enterprise – the

15   marijuana dispensary that they ran together.  (Doc. No. 3 at 1–7.)  At sentencing Montes' adjusted

16   offense level as to his CCE conviction was found to be 38, his complete lack of criminal history

17   placed him in category I and his advisory sentencing guideline range called for a term of

18   imprisonment of between 235 and 293 months.  (Doc. No. 372 at 134.)  But for the twenty-year

19   minimum mandatory sentence on the CCE charge, the sentencing judge indicated he would have

20   sentenced defendant Montes to a 210 month term of imprisonment.  (*Id.* at 135.)  However,

21   Montes was sentenced to the 240-month term as required by the mandatory minimum.  (*Id.*)

22         Of considerable significance in connection with the pending motion, however, defendant

23   Montes was released from prison when the President granted his clemency application and

24

25   defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing
     Commission; the need to avoid unwarranted sentence disparities among defendants with similar
26   records who have been found guilty of similar conduct; and the need to provide restitution to any
     victims of the offense.
27

28   [19]  Montes was actually convicted at trial of two more counts of possession with intent to
     distribute in violation of 21 U.S.C. § 841 than defendant Scarmazzo.

1   commuted his sentence as of May 19, 2017.  *See United States v. Ricardo Ruiz Montes*, No. 06-

2   cr-342-LJO-2 at Doc. No. 452 (E.D. Cal. Jan. 19, 2017).[20]  Defendant Montes received an

3   original sentence only 22 months lower than defendant Scarmazzo after consideration of all

4   relevant sentencing factors.  Yet, for the past approximately 68 months, Montes has been out of

5   custody, and presumably completed his supervised release term, while defendant Scarmazzo

6   remains imprisoned.  While that is not a disparity in sentencing *per se*, it is a very real disparity in

7   the sentences actually served even if partially or wholly justified under the circumstances of the

8   two co-defendants.  In any event, it is certainly a factor which this court believes, at least to some

9   degree, supports the granting of the pending motion for compassionate release.

10          Next, the court observes that during defendant Scarmazzo's fourteen plus years of federal

11  incarceration, he has demonstrated generally good behavior with a very minimal prison

12  disciplinary history, maintained meaningful prison employment, involved himself in volunteer

13  activities, and completed more than 50 educational/pre-release courses.  He has also become a

14  published author and has several committed job offers if he is released from custody.  (*See* Doc.

15  No. 454 at 39–40; 495 at 13.)  It appears to the court that defendant Scarmazzo has engaged in

16  significant rehabilitative efforts during his over 14 years in federal prison.  Defendant's brother

17  has also assured the court that he will assist defendant in obtaining transportation, medical

18  insurance, and other support.  (Doc. No. 454 at 24, 42–43.)  Nothing has been presented to the

19  court to raise any real concern that, if released, defendant would pose a danger to his community

20  at this point.  Moreover, defendant Scarmazzo has expressed his intention to continue his

21  volunteer work with at-risk youth.  (*See* Doc. No. 454 at 45.)  In this case, these circumstances,

22  when considered together, support the granting of compassionate release.  *See, e.g., Greenhow v.*

23  *United States*, No. 4:95-cr-39(3), 2020 WL 5539045, at *5 (E.D. Va. Sept. 15, 2020) ("Based on

24  all of the § 3553(a) factors and ... Petitioner's evidence of rehabilitation since the original

25  sentence ..., the Court finds a sentence of Time Served is sufficient but not greater than necessary

26  to serve the purpose of the sentencing."); *United States v. Johnson*, 4:92-cr-4013-WS-CAS, 2019

27  _____

28  [20] It is the court's understanding that defendant Scarmazzo also submitted an application for
clemency, but his application was not granted by the President.

1   WL 7496780, at *3 (N.D. Fla. Oct. 31, 2019) (reducing a life sentence to one of time served after

2   the defendant had served twenty-seven years in prison and had received only two prison

3   disciplinary incident reports during that lengthy period of incarceration); *United States v. Barber*,

4   409 F. Supp. 3d 542, 549 (W.D. Va. 2019) (reducing a life sentence to one of time served after

5   finding that the defendant's "history as a young man and his behavior while in prison, his age, the

6   amount of time he has served, his family support, and his desire to work in the food industry upon

7   release all suggest that he be given a time served sentence.").

8          Finally, defendant Scarmazzo's family situation has changed significantly and for the

9   worse in recent years.  The defendant's daughter was only five years old when he entered federal

10  custody.  (Doc. Nos. 502 at 3, 502-1 at 3.)  The court believes that for some period of time after

11  defendant was imprisoned, his daughter was in the care of defendant's parents.  It is reported that

12  although defendant stays in very close telephone contact with his daughter, she is now struggling

13  significantly on several fronts and would presumably benefit from defendant's presence.  (Doc.

14  Nos. 502 at 3; 502-1 at 3-4; 506 at 3.)  Moreover, as defendant's parents have grown older, they

15  have begun to suffer serious medical issues.  His mother has recently undergone major neck and

16  spine surgery and is currently bedridden.  (*Id.*)  Most compelling is that in combination with these

17  hardships, defendant's father has been battling terminal cancer.  (*Id.*)  Such challenging family

18  circumstances that have developed while defendant has been imprisoned also support his

19  compassionate release at this time.  *See United States v. Potenciano*, 16-cr-01285-BEN, 2022 WL

20  3364684, at *2 (S.D. Cal. Aug. 12, 2022); *United States v. Alvarado*, 569 F. Supp. 3d 1039, 1042

21  (S.D. Cal. 2021); *United States v. Rojas*, 17-cr-337-LAB, 2021 WL 4690509, at *2-3 (S.D. Cal.

22  Oct. 7, 2021) (and cases cited therein).  The undersigned recognizes, as many courts have, that

23  such family circumstances are present in a large number of cases where defendants are serving

24  lengthy federal prison sentences and therefore cannot alone call for the granting of compassionate

25  release.  However, these family circumstances are a factor present in this case that should be

26  considered along with all the other circumstances discussed above in determining whether, in

27  total, extraordinary and compelling circumstances exist justifying the granting of compassionate

28  release.

When considering the unique confluence of all of these circumstances—changes in the legal landscape with respect to federal enforcement of laws relating to distribution of marijuana in California; the significant disparity in the sentence actually served by co-defendant Montes and the 14+ years already served in prison by defendant Scarmazzo; defendant's good behavior, meaningful employment, volunteer work, pursuit of educational opportunities during his imprisonment; defendant's solid release plans including job offers and family support; the lack of danger posed to the community were he to be released; and defendant Scarmazzo's difficult family circumstances that have developed during his imprisonment—the court is persuaded that the granting of the requested relief is appropriate at this point and is supported by both extraordinary and compelling circumstances and consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).

## CONCLUSION

For the reasons discussed above, defendant Scarmazzo's Motion for Reduction in Sentence (Doc. Nos. 453, 454, 464, 471, 477, 479, 480, 481, 482) is granted.  Defendant's sentences on Counts 1, 3 and 7 are reduced to a sentence of time served as to each of those counts.  The aggregate term of five years supervised release previously imposed remains unchanged and in place, but instead of the standard conditions of supervised release imposed at the time of defendant's original sentencing as set out in the original judgment, (*see* Doc. No. 331), the court now imposes the following standard conditions of supervised release:

**Standard Conditions**

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2. After initially reporting to the probation office, you will receive instructions from the Court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the Court or the probation officer.

4.  You must answer truthfully the questions asked by the probation officer.

5.  You must live at a place approved by the probation officer.  If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change.  If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment, you must try to find full-time employment, unless the probation officer excuses you from doing so.  If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change.  If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8.  You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10.    You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or tasers).

11.    You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the Court.

12.    If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction.  The probation officer may contact the person and confirm that you have notified the person about the risk.

13.    You must follow the instructions of the probation officer related to the conditions of supervision.

**Special Conditions**

In addition, after consultation with the U.S. Probation Office of this district, the special conditions of defendant Scarmazzo's term of supervised release are hereby modified as follows:

1.    You must submit your person, property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer or any law enforcement officer under the immediate and personal supervision of the probation officer, based upon reasonable suspicion of unlawful conduct or a violation of a condition of supervision, without a search warrant.  Failure to submit to a search may be grounds for revocation.  You must warn any other occupants that the premises may be subject to searches pursuant to this condition.

2.    You must submit to substance abuse/alcohol abuse testing to determine if you have used a prohibited substance.  You must not attempt to obstruct or tamper with the testing methods.

3.     You must provide the probation officer with access to any requested financial information and authorize the release of any financial information.  The probation office may share financial information with the U.S. Attorney's Office.

4.     You must participate in a co-payment plan for treatment, testing and/or medication and shall make payment directly to the vendor under contract with the United States Probation Office.  Your co-payment will be determined utilizing a Sliding Fee Scale based upon your disposable income.

IT IS SO ORDERED.

Dated:   **February 3, 2023**

UNITED STATES DISTRICT JUDGE